**John MALUDA, Appellant**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 10–1753.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) May 26, 2011.

Filed: June 23, 2011.

Harvey Poe, Esq., Starr, Gern, Davison & Rubin, Roseland, NJ, for Appellant.

Gary R. Allen, Esq., Bruce R. Ellisen, Esq., Teresa T. Milton, Esq., United States Department of Justice, John A. Dicicco, Esq., United States Department of Justice, Office of Special Litigation, Wil-

liam J. Wilkins, Esq., Internal Revenue Service, Washington, DC, for Appellee.

Before: McKEE, Chief Judge, SCIRICA and RENDELL, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

John Maluda requested Innocent Spouse Relief from joint and several liability for underreported income on joint tax returns he filed with his wife, Cathy, between 1998 and 2002. The Commissioner of Internal Revenue denied John's request, and the Tax Court upheld the IRS's decision. On appeal, John contends he was entitled to Innocent Spouse Relief based on nominal ownership and misallocation of underreported income. We will affirm.

### I.

On June 11, 1994, John and Cathy Maluda married. During the taxable years 1998–2002, John ran a tool dealership as a Schedule C sole proprietorship while Cathy was an unemployed homemaker. During this period, the Maludas filed joint income tax returns, but failed to pay taxes on John's self-employment income. On June 26, 2006, the Maludas separated, and Cathy filed for divorce on December 22, 2006.

The Maludas filed untimely joint income tax returns for the years 1999–2002 on December 29, 2004, and an untimely joint return for 1998 on February 12, 2007, to reflect their income, almost all of which came from John's business. On May 4, 2007, John filed with the IRS a Request for Innocent Spouse Relief, IRS form 8857, seeking relief from liability for unpaid taxes during the years 1998–2002. This form stated John was not responsible for the Maludas' underpayment of taxes because Cathy had led him to believe she prepared and filed their joint tax returns in these years when, in fact, she had diverted these funds to her own use. In support of his request, John produced a counterfeit passbook in the Maludas' name reflecting false deposit and withdrawal information from the joint bank account the Maludas held at the Valley National Bank. John contends Cathy fabricated this passbook to convince him she had paid their taxes.

On October 24, 2007, the IRS denied John's request for Innocent Spouse Relief "because relief is not allowed on tax you owe on your own income or deductions." John timely filed a petition for review in Tax Court, where the parties submitted the case without a trial and on the basis of a stipulated record. The court agreed with the IRS that relief is not typically available for a taxpayer who fails to file taxes on his own income, but also concluded the IRS failed to consider exceptions to this rule. But the court found John did not meet these exceptions and upheld the IRS's order denying his request. John timely appealed.[1]

### II.

On appeal, John contends the Tax Court erred in finding he was not entitled to Innocent Spouse Relief under § 6015(f) of the Internal Revenue Code (IRC).[2]

---

1. The Tax Court had jurisdiction under 26 U.S.C. §§ 6015(e)(1)(A) and 7442. We have jurisdiction under 26 U.S.C. § 7482(a)(1).

2. "Our review of the Tax Court's legal conclusions is plenary and is based on the clearly erroneous standard for its findings of fact."

*Neonatology Assocs. v. Comm'r*, 299 F.3d 221, 227 (3d Cir.2002) (internal quotation marks omitted). "The Tax Court's determination that a spouse is not entitled to innocent spouse relief is a finding of fact that this court reviews for clear error." *Cheshire v. Comm'r*, 282 F.3d 326, 332 (5th Cir.2002).

Spouses filing joint federal income tax returns are generally jointly and severally liable for the full amount of tax due on their combined incomes. I.R.C. § 6013(d)(3). However, § 6015 provides several circumstances whereby a requesting taxpayer who files a joint tax return may qualify for Innocent Spouse Relief and be relieved of joint and several liability for unpaid sums. Section 6015(f) permits the Secretary of the Treasury to relieve an individual from joint and several liability if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax...." Internal Revenue Procedures list seven conditions a requesting taxpayer must satisfy to be eligible for relief under § 6015(f). The only one at issue is condition 7. Condition 7 reads, in relevant part:

> The income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return (the "nonrequesting spouse"), unless one of the following exceptions applies:
>
> ...
>
> (b) *Nominal ownership.* If the item is titled in the name of the requesting spouse, the item is presumptively attributable to the requesting spouse. *This presumption is rebuttable ....*
> (c) *Misappropriation of funds.* If the requesting spouse did not know, and had no reason to know, that funds intended for the payment of tax were misappropriated by the nonrequesting spouse for the nonrequesting spouse's benefit, the Service will consider granting equitable relief although the underpayment may be attributable in part or in full to an item of the requesting spouse. The Service will consider relief in this case only to the extent that the funds intended for the

payment of tax were taken by the nonrequesting spouse.

> ...

Rev. Proc.2003–61, 2003–2 C.B. 296 (emphasis added).

■ John contends he meets condition 7(b) of section 4.01 because he owned the understated income only nominally. Condition (7)(b) gives an example illustrating "nominal ownership," whereby a spouse will not be held jointly and severally liable for underpaid taxes: When a husband, unbeknownst to his wife, 1) opens an individual retirement account (IRA) in his wife's name by forging her signature, 2) contributes to the IRA, 3) takes a taxable distribution from the IRA, and finally 4) files a joint tax return with his wife without reporting the taxable distribution.

John does not resemble the innocent wife of the IRS's nominal ownership scenario. The parties stipulated the Maludas' income came almost exclusively from John's business and was held jointly by John and Cathy. While John claims Cathy "handled all financial matters" for the household, the record does not clearly support that conclusory assertion. Furthermore, even if Cathy did exercise exclusive control over the income, John voluntarily acceded to Cathy's controlling the Maludas' income. "[I]ncome earned by one person is taxable as his, if given to another for the donor's satisfaction." *Thomas Flexible Coupling Co. v. Comm'r*, 158 F.2d 828, 832 (3d Cir.1947). Accordingly, John cannot deny ownership of income because his wife controlled the family finances while he earned the income. The Tax Court did not clearly err in concluding the record "does not establish ... that [John Maluda's] earnings from his sole proprietorship are not attributable to himself."

■ John also contends he meets condition 7(c) of section 4.01 because he alleges

Cathy produced false tax returns and misappropriated funds earmarked for tax payments. John insists he did not know of Cathy's misdeeds, nor could he have known. Again, the record does not clearly support these conclusions. The stipulated facts demonstrate only that the Maludas' joint tax returns between 1998 and 2002 were never filed with the IRS, and the Valley National Bank passbook in the Maludas' name is a complete fabrication. John maintains Cathy is responsible for these transgressions. However, the record identifies no actor responsible for any misrepresentations or misappropriations. The parties never agreed, nor does the documentary record clearly demonstrate, that Cathy bore sole responsibility for underreporting income to the IRS or diverted funds to her own use.

Even if Cathy did misrepresent the couple's income, John presents no evidence she acted without his knowledge. Had the Tax Court conducted a trial, John might have demonstrated Cathy's culpability and his own innocence. Because the parties submitted the case on the basis of a stipulated record, John had no such opportunity. Therefore, the court did not clearly err in concluding the record "does not establish that Ms. Maluda misappropriated funds intended for tax payments."

## III.

For the foregoing reasons, we will affirm the Tax Court's judgment.